IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

PLANNED PARENTHOOD OF
WISCONSIN, INC., et al.,

      Plaintiffs,

    v.                      Case No. 19-CV-0038

JOSHUA KAUL, et al.,

      Defendants.

## DEFENDANTS' PRETRIAL BRIEF

The plaintiffs challenge three Wisconsin laws relating to abortion that have been in place for many years. They challenge the "Physician-Only Law," which limits the provision of abortions to licensed physicians, and which has been the practice in Wisconsin since *Roe v. Wade*. They also challenge a law requiring that a physician must be physically present when abortion-inducing drugs are dispensed to patients, the "Physical Presence Law," and a law that requires the same physician who conducted the pre-procedure physical exam be the physician that prescribes the drug, the "Same Physician Law." These two laws have been in place since 2012.

In most challenges to abortion laws, plaintiffs contend that a new law will close clinics and therefore cause an undue burden by reducing access to

abortion. Here, in contrast, the plaintiffs allege that the laws impose an undue burden because Planned Parenthood of Wisconsin, Inc. would attempt to expand abortion services should the challenged laws be overturned.

As an initial matter, the legal standard governing challenges to abortion laws has been clarified. Courts no longer weigh the benefits and burdens of an abortion law in determining whether there is an "undue burden." Instead, defendants need only show that a law has a legitimate purpose and is reasonably related to a goal. The Supreme Court has recognized the legitimacy of physician-only laws, and the other two laws have valid bases in protecting patient health. As a result, the three laws easily meet this deferential standard here. And for that same reason, the plaintiffs' equal protection claims fail as well.

The court then examines whether there is an undue burden, which it may find only if the law imposes a substantial obstacle to a large fraction of women from obtaining an abortion. The plaintiffs cannot make that showing here. All abortions that have taken place in Wisconsin since *Roe* have occurred with the Physician-Only Law in effect, and all medication abortions since April 2012 have occurred with the Physical Presence and Same Physician laws in place. The plaintiffs' own statistical projections show only a small increase in the number of abortions if the laws are struck down and Planned Parenthood

begins providing abortions at new locations. As a result, the plaintiffs will not be able to show that the laws impose an undue burden.

## BACKGROUND

### I.     The laws at issue

The plaintiffs challenge three sets of abortion regulations. One, the Physician-Only Law, applies to all abortions. The two others, the Physical Presence Law and Same Physician Law, apply only to medication abortions.

### A.     The Physician-Only Law

Wisconsin makes it a crime for non-physicians to provide abortions. One statute provides that "[w]hoever intentionally performs an abortion and who is not a physician is guilty of a Class I felony." Wis. Stat. § 940.15(5). In addition, Wisconsin law criminalizes the intentional destruction of an unborn child, but this prohibition does not apply to "a therapeutic abortion" that  is "performed by a physician." Wis. Stat. § 940.04(5)(a).

Wisconsin's Administrative Code relating to the practice of medicine similarly provides that "[t]he performance of abortions involves medical and surgical procedures . . . and may be performed only by physicians duly licensed by the medical examining board." Wis. Admin. Code Med. § 11.03.

Wisconsin's informed consent law also requires that a physician provide certain information to a woman prior to the abortion procedure. Wis. Stat. § 253.10(3)(c)(1).

**B.      The Physical Presence and Same Physician Laws**

The Physical Presence and Same Physician Laws were passed as part of 2011 Wisconsin Act 217, which went into effect on April 20, 2012. They provide that:

> (2) No person may give an abortion-inducing drug to a woman unless the physician who prescribed, or otherwise provided, the abortion-inducing drug for the woman:
>
> (a) Performs a physical exam of the woman before the information is provided under s. 253.10 (3) (c) 1.
>
> (b) Is physically present in the room when the drug is given to the woman.

Wis. Stat. § 253.105(2)(b). Subsection (2)(a) is the Same Physician Law and subsection 2(b) is the Physical Presence Law.

## II.   Facts

Wisconsin's Department of Health Services keeps track of the number of abortions that occur in the State each year. In 2018, the most recent year for which data are available, 6,042 abortions were performed on Wisconsin residents in the State. In 2017, 5,640 abortions were performed on Wisconsin residents.

The plaintiffs' only quantitative measure of the burden allegedly imposed by the challenged laws is the expert report of Jason Fletcher. (Dkt. 65.) Dr. Fletcher performed a study of the effect of the change in distance to the nearest abortion clinic has on the number of abortions in Wisconsin

counties—using clinics that had closed in Green Bay in 2013 and Appleton in 2016—finding that increasing the distance somewhat decreased the number of abortions. He then assumed Planned Parenthood would start providing abortions in Green Bay, La Crosse and Wausau, and projected increased abortions due to the shortening of distance to the nearest clinic. This analysis attempts to predict the future based on counterfactuals—both that abortion services would be expanded, and that expansion would have the predicted effects. It also assumes the results from closures in the northeastern part of the state—which had clinics that were then closed—would  translate to other areas of the State where there have never been abortion clinics.

But even taking the projections on their own terms, they do not show significant effects from opening new clinics. Instead, the trial evidence will show that the three clinics would increase the abortion rate between 10%–15% in the counties surrounding the new clinic and, in raw numbers terms, would not add a significant amount of abortions to the state totals. For example, the La Crosse clinic is projected to add 24 abortions (an 11.1% increase in the surrounding counties), the Wausau clinic to add 42 abortions (a 13.4% increase in the nearby counties) and Green Bay to add 100 abortions (a 14.3% increase in nearby counties).

## ARGUMENT

The Court must first address the proper legal standard to apply. The proper legal standard for challenges to abortion laws no longer balances the benefits and the burdens of an abortion law. Instead, the laws need only have a rational relationship to a legitimate purpose and not impose an undue burden. Under this correct standard, all three laws being challenged here are constitutional. The Supreme Court has repeatedly said that states can limit the provision of abortions to licensed physicians, and the two other laws are rationally related to legitimate purposes. These rational relationships defeat the plaintiffs' equal protection claims as well. Finally, the laws do not impose an undue burden because they do not impose a substantial obstacle in a significant fraction of the cases in which they are relevant.

## I. Courts no longer balance the benefits and burdens of a law when deciding whether a law imposes an undue burden.

The defendants expect that the plaintiffs will contend that the laws at issue need to meet the balancing test articulated in *Whole Woman's Health v. Hellerstedt*, 579 U. S. ——, 136 S. Ct. 2292 (2016), but that test is not the governing standard after *June Medical Services. L. L. C. v. Russo*, 140 S. Ct. 2103 (2020). Instead of a balancing test, a law is unconstitutional only if it is (1) not reasonably related to a legitimate purpose, or (2) imposes a substantial

obstacle to a woman's choice to undergo an abortion in a large fraction of the cases in which the challenged law is relevant.

In *June Medical*, the Court held that an admitting privileges law like the one at issue in *Whole Woman's Health* was unconstitutional. The fifth vote for that holding was provided by Chief Justice Roberts, who concurred in the judgment but said that "[n]othing about *Casey* suggested that a weighing of costs and benefits of an abortion regulation was a job for the courts." 140 S. Ct. at 2136 (Roberts, C.J., concurring in the judgment). Rather, the Court has "explained that the 'traditional rule' that 'state and federal legislatures [have] wide discretion to pass legislation in areas where there is medical and scientific uncertainty' is 'consistent with *Casey*.'" *Id.* (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)). "*Casey* instead focuses on the existence of a substantial obstacle, the sort of inquiry familiar to judges across a variety of contexts." *Id.* A law's benefits "were not placed on a scale opposite the law's burdens. Rather, *Casey* discussed benefits in considering the threshold requirement that the State have a 'legitimate purpose' and that the law be 'reasonably related to that goal.'" *Id.* (quoting *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 878 (plurality opinion)). The defendants need not provide medical experts justifying the benefits—this is akin to a rational basis review; in fact, *Casey* even cited a rational basis case when discussing this test. *Casey*,

505 U.S. at 885 (citing *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955)).

If the State makes the showing that a law is reasonably related to a legitimate purpose, "the only question for a court is whether a law has the 'effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.'" *June Medical*, 140 S. Ct. at 2138 (Roberts, C.J., concurring in the judgment) (quoting *Casey*, 505 U.S. at 877 (plurality opinion)). And *Casey* explained that when "in a large fraction of the cases in which [the challenged law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895 (plurality opinion).

The Supreme Court's actions in two Seventh Circuit cases show that the balancing test discussed in *Whole Woman's Health* is not the governing standard. In those cases, the Seventh Circuit had balanced the burdens and benefits as in *Whole Woman's Health*. *See Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r of Indiana State Dep't of Health*, 896 F.3d 809, 818–33 (7th Cir. 2018); *Planned Parenthood of Indiana & Kentucky, Inc. v. Adams*, 937 F.3d 973, 983–90 (7th Cir. 2019). The Supreme Court vacated the lower courts' decisions and remanded the cases "for further consideration in light of *June Medical Services L.L.C. v. Russo*, 591 U.S. ——, 140 S.Ct. 2103, 207 L.Ed.2d 566 (2020)." *Box v. Planned Parenthood of Indiana & Kentucky,*

*Inc*, No. 19-1019, 2020 WL 3578669, at *1 (U.S. July 2, 2020); *Box v. Planned Parenthood of Indiana & Kentucky, Inc.*, No. 19-816, 2020 WL 3578672, at *1 (U.S. July 2, 2020). If the balancing test from *Whole Woman's Health* still applied, then the Court would have had no reason to vacate the decisions and remand for further consideration of *June Medical*. This action was necessary only because that balancing test is not the proper legal standard.

This reality has been recognized by both the Sixth and Eighth Circuits, analyzing *June Medical* using the framework in *Marks v. United States*, 430 U.S. 188, 193 (1977), under which the "holding of the Court may be viewed as the position taken by the Members who concurred in the judgments on the narrowest grounds." The Sixth Circuit held that Chief Justice Roberts's concurrence governs because it was "the narrowest opinion concurring in the judgment is the one that would strike down the fewest laws regulating abortion in future cases." *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, No. 18-6161, 2020 WL 6111008, at *9 (6th Cir. Oct. 16, 2020). Under Chief Justice Roberts's opinion, only laws that are "not 'reasonably related' to a 'legitimate purpose' or that impose a 'substantial obstacle' are unconstitutional." *Id.* (quoting *June Med. Servs.*, 140 S. Ct. at 2138 (Roberts, C.J., concurring in the judgment)). In contrast, the balancing test would strike down more laws, including those "where 'the balance' between the law's benefits and its burdens 'tipped against the statute's constitutionality.'" *Id.*

9

(quoting *June Med. Servs.*, 140 S. Ct. at 2138 (Roberts, C.J., concurring in the judgment)). The Chief Justice's interpretation and application of *Whole Women's Health* is therefore binding on lower courts. *Id.* at *12.

Similarly, the Eighth Circuit held that Chief Justice Roberts's separate opinion is controlling because his vote was necessary in holding that Louisiana's admitting-privileges law was unconstitutional. *Hopkins v. Jegley*, 968 F.3d 912, 915 (8th Cir. 2020) (citing *Marks*, 430 U.S. at 193). As a result, in light of the Chief Justice's concurrence and the Court's grant, vacate and remand order in *Box, id.* at 916, the court remanded the case to the district court because the district court had applied the balancing test from the majority decision in *Whole Women's Health*.

While the Fifth Circuit has disagreed with this approach, *see Whole Woman's Health v. Paxton*, No. 17-51060, 2020 WL 6218657, at *4–5 (5th Cir. Oct. 13, 2020), a petition for en banc review has been filed. And as the dissent in that case noted, the majority was applying "the same balancing test that 'five Members of the Court reject[ed]'—irrefutably—a few months ago. Proper application of the *Marks* rule dictates otherwise." *Id.* at *13 (Willett, J., dissenting) (quoting *June Medical*, 140 S. Ct. at 2182 (Kavanaugh, J., dissenting)).

## II.   The challenged laws are rationally related to a legitimate purpose.

All three laws are reasonably related to a legitimate purpose. As interpreted in *Casey* and the Chief Justice's concurrence in *June Medical*, this is not a demanding standard. *Casey* even cited *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1955), a case involving rational basis review, when concluding that "the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Casey*, 505 U.S. at 885 (plurality opinion). Two of the regulations at issue here—the Physician-Only Law and the Same Physician Law—fall into this category.[1]

Further, the court must apply "the 'traditional rule' that 'state and federal legislatures [have] wide discretion to pass legislation in areas where there is medical and scientific uncertainty' is 'consistent with *Casey*.'" *June Medical*, 140 S. Ct. at 2136 (Roberts, C.J., concurring in the judgment) (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)). The Sixth Circuit recently applied this type of review when upholding a requirement that abortion

---

[1] The defendants understand that the plaintiffs will contend their equal protection claims are governed by heightened scrutiny. *Casey* conclusively establishes that this is not correct by relying on a case that used rational basis review to decide a challenge to a regulation limiting provision of services to certain types of professionals.

11

providers have a transfer and transport agreement with a hospital. *EMW Women's Surgical Ctr.*, 2020 WL 6111008, at *15.

### A. The Supreme Court has held that physician-only laws are valid, and Wisconsin's Physician-Only law is too.

The Supreme Court has already determined that physician-only laws are constitutionally permissible. In *Roe v. Wade*, 410 U.S. 113, 165 (1973), the Court held that "[t]he State may define the term 'physician,' to mean only a physician currently licensed by the State, and may proscribe any abortion by a person who is not a physician as so defined." The Court later reiterated that its cases "left no doubt that, to ensure the safety of the abortion procedure, the States may mandate that only physicians perform abortions." *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 447 (1983). After *Casey*, the Court again upheld a law "restricting the performance of abortions to licensed physicians." *Mazurek v. Armstrong*, 520 U.S. 968, 969 (1997) (per curiam). The Court faulted the appeals court for not considering its "repeated statements in past cases . . . that the performance of abortions may be restricted to physicians." *Id.* at 974.

The Court reaffirmed that states can, consistent with the Constitution, limit the provision of abortion to physicians. The *Mazurek* plaintiffs argued that the Montana law had no health basis because the only study on the issue found no significant difference in the complication rates of abortions performed

by doctors and physician-assistants. 520 U.S. at 973. The Court rejected this argument by relying on *Casey* which, in upholding a law requiring the physician to provide informed-consent information, held that "the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, *even if an objective assessment might suggest that those same tasks could be performed by others*." *Id.* at 972 (quoting *Casey*, 505 U.S. at 885 (plurality opinion) (emphasis in original)). Importantly, Chief Justice Roberts in *June Medical* noted that this reasoning in *Mazurek* forecloses any sort of balancing test. *June Medical*, 140 S. Ct. at 2138.[2]

Further, the Seventh Circuit recognizes that a district court has no authority to overrule the Supreme Court on issues like this, even if a party offers expert witnesses and studies claiming that the Court was wrong. *Frank v. Walker*, 768 F.3d 744, 750 (7th Cir. 2014) ("After a majority of the Supreme Court has concluded that photo ID requirements promote confidence, a single district judge cannot say as a 'fact' that they do not, even if 20 political scientists disagree with the Supreme Court."). Thus, the plaintiffs' expert testimony that advanced practice nurses can perform abortions just as safely as physicians—the expert testimony of Dr. Daniel Grossman, (Dkt. 62), and Dr. Joanne Spetz, (Dkt. 63)—is simply irrelevant.

---

[2] This precedent also defeats the plaintiffs' equal protection challenges to the Physician-Only Law, conclusively establishing a rational basis as a matter of law.

Should the Court apply the balancing test from *Whole Woman's Health*, the Physician-Only Law would still pass that test. As noted, the Supreme Court has recognized the medical benefits of the law, which a lower court has no authority to second-guess despite what evidence a party has submitted. *Frank*, 768 F.3d at 750. And with the benefit being established as a matter of law, the burden the plaintiffs here allege is not sufficient to make the law unconstitutional (and it is doubtful that any burden would be able to do so).

In fact, in a decision issued before *June Medical*, the Eastern District of Virginia recently held that a physician-only law did not impose an undue burden under the balancing test. *Falls Church Med. Ctr., LLC v. Oliver*, 412 F. Supp. 3d 668, 688–92 (E.D. Va. 2019). Even though the plaintiffs submitted evidence that advanced practice nurses could perform abortion procedures safely, "permitting them to do so faces a formidable line of countervailing authority," dating back to *Roe*. *Id.* at 691. Further, *Casey* recognized that "the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Id.* (quoting *Casey*, 505 U.S. at 884–85 (plurality opinion)). Thus, the Physician-Only Law is valid even under the balancing approach in *Whole Woman's Health*.

14

**B.     The Physical Presence Law is rationally related to a legitimate purpose.**

The Physical Presence Law is rationally related to protecting patient health. Mifeprex, one of the two drugs given for medication abortion, has serious potential side effects and is therefore subject to a Risk Evaluation and Mitigation Strategy (REMS) from the federal Food and Drug Administration (FDA). Because the FDA REMS requires that Mifeprex must be dispensed in a clinic, medical office, or hospital and under the supervision of a certified health care provider, the Wisconsin Legislature required Mifeprex to be dispensed in the presence of the certified health care provider. And given that physicians are the only health care providers authorized to perform abortions in the State—which the Supreme Court recognizes as constitutional—the State requires Mifeprex to be dispensed in the presence of the physician.

In any event, medication abortion is a relatively new procedure compared to surgical abortion. The FDA only approved Mifeprex for use in the year 2000, and the studies relied upon by the plaintiffs' experts opining that it can be safely administered via telemedicine are fairly recent. Courts are not to second-guess legislatures in areas of scientific uncertainty. The Supreme Court has "explained that the 'traditional rule' that 'state and federal legislatures [have] wide discretion to pass legislation in areas where there is medical and scientific uncertainty' is 'consistent with Casey.'" *June Medical*, 140 S. Ct.

at 2136 (Roberts, C.J., concurring in the judgment) (quoting *Gonzales*, 550 U.S. at 163).

## C.   The Same Physician Law is rationally related to a legitimate purpose.

The Same Physician Law is also rationally related to patient care, ensuring continuity of care for the patient. The plaintiffs do not dispute that a pre-procedure physical examination is necessary; instead, they claim that that the pre-procedure physical could be performed by another health care professional. In fact, the plaintiffs recognize that having the same professional perform both the pre-procedure physical and the procedure is preferable—the evidence will show that Planned Parenthood plans to have the same advanced practice nurse do both the pre-procedure physical and dispense the drug should the challenged laws be enjoined.

The Supreme Court in *Casey* rejected the argument that a law was unconstitutional because a certain task can be performed by another type of professional. In upholding a law requiring that informed consent materials be provided a physician, the plurality opinion said that "[o]ur cases reflect the fact that the Constitution gives the States broad latitude to decide that particular functions may be performed only by licensed professionals, even if an objective assessment might suggest that those same tasks could be performed by others." *Casey*, 505 U.S. at 885 (plurality opinion) (citing *Williamson*, 348 U.S.

483). As Chief Justice Roberts noted in *June Medical*, "[t]his was so 'even if an objective assessment might suggest that those same tasks could be performed by others,' meaning the law had little if any benefit." 140 S. Ct. at 2137 (Roberts, C.J., concurring in the judgment) (quoting *Casey*, 505 U.S. at 885 (plurality opinion)). Under this precedent, the Same-Physician law has a rational relationship to a legitimate purpose—ensuring continuity of care for the patient—and cannot be defeated because the task could be performed by another.

## III.   The challenged laws do not impose an undue burden.

Given that the laws are rationally related to legitimate purposes (and therefore pass equal protection muster), the only remaining question is whether they impose an undue burden. A law only imposes an undue burden when "in a large fraction of the cases in which [the challenged law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895 (plurality opinion). Increased costs and travel time are not necessarily undue burdens—the Court in *Casey* said the fact that laws "ha[ve] the incidental effect of making it more difficult or more expensive to procure an abortion cannot be enough to invalidate it." *Id.* at 874. The plaintiffs here have not shown that the laws impose a substantial obstacle in a large fraction of the cases in which they are relevant.

As noted above, the plaintiffs' only quantitative evidence on undue burden is the expert report of Jason Fletcher. (Dkt. 65.) He studied the effect of the change in distance to the nearest abortion clinic on the number of abortions in Wisconsin counties, finding that increasing the distance somewhat decreased the number of abortions. While there are flaws with this approach, the projections on their own terms do not show significant effects from opening new clinics. Instead, the evidence at trial will show the three clinics would increase the abortion rate between 10%–15% in the counties surrounding the new clinic and, in raw numbers terms, would not add a significant amount of abortions to the state totals. For example, the La Crosse clinic is projected to add 24 abortions (an 11.1% increase in the surrounding counties), the Wausau clinic to add 42 abortions (a 13.4% increase in the nearby counties) and Green Bay to add 100 abortions (a 14.3% increase in nearby counties). Statewide, the impact is not significant given that Wisconsin residents had 5,640 total abortions in the State in 2017 and 6,042 in 2018—all of whom have been able to obtain an abortion despite the presence of the challenged laws. Even the plaintiffs' own projections do not show a substantial obstacle to a significant fraction of women even in these counties.[3] And given

---

[3] The plaintiffs also rely on an expert report by Jane Collins. (Dkt. 64.) Dr. Collins, however, does not quantify whether the laws impose an undue burden on a significant fraction of women. Instead, she merely opines that there are poor women

that the Physician-Only Law is relevant to all abortions in the State, and the other two laws are relevant to all medication abortions, the proper denominator is all women, not just the women the plaintiffs claim would be burdened by the law.

In addition, the plaintiffs' evidence assumes that all three laws are struck down at the same time. For example, Fletcher's study of Green Bay and La Crosse assumes that advanced practice nurses would be providing surgical abortions at three clinics. That would not be the case, however, if the Physician-Only Law is constitutional. The plaintiffs have not quantified the alleged effect of each law individually. If the Physician-Only Law is constitutional—as it surely must be given Supreme Court precedent—then their evidence does not show what the burden are due to the Physical Presence Law and/or the Same Physician Law.

Lastly, the plaintiffs have not shown that the Same Physician Law imposes a burden. The evidence will show that Planned Parenthood has had about 50–60 women per year that were negatively affected by this law, but not even in a way that prevents them from obtaining an abortion. Instead, these women had to reschedule their second appointment due to the physician being

---

in the State who sometimes have difficulty in obtaining abortions due to cost and travel difficulties. This evidence is not sufficient under *Casey*, where increased costs are not necessarily an undue burden. 505 U.S. at 874 (plurality opinion). Instead, a plaintiff must show there is a substantial obstacle to a significant fraction of women.

unavailable. While this is inconvenient and may increase the time and costs for this small number of women, it is not a substantial obstacle. *Casey*, 505 U.S. at 874 (plurality opinion). And given that this law is relevant to all medication abortions, it imposes a substantial obstacle on a miniscule fraction of women.

## CONCLUSION

The evidence at trial will show the challenged laws are constitutional.

Dated this 13th day of November 2020.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/ Brian P. Keenan
BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

JENNIFER L. VANDERMEUSE
Assistant Attorney General
State Bar #1070979

CLAYTON P. KAWSKI
Assistant Attorney General
State Bar #1066228

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-0020 (BPK)
(608) 266-7741 (JLV)
(608) 266-8549 (CPK)
(608) 294-2907 (Fax)
keenanbp@doj.state.wi.us
vandermeusejl@doj.state.wi.us
kawskicp@doj.state.wi.us